**Kimberly S. EZELL, Individually, and as surviving spouse of the deceased, Tarrence Ray Ezell, Plaintiff/Appellant,**

v.

**Joseph COCKRELL, Administrator, ad Litem of the Estate of James Gregory Hillis, Donna League Garrison Blankenship, William A. Adams, individually and in his official capacity as a police officer employed by the City of Elkton, Tennessee, City of Elkton, Giles County, Tennessee, John Wayne Tillery and wife, Sandy Tillery, d/b/a Boondocks' Saloon, and Ricky Joe Brooks, d/b/a Boondocks' Saloon, and John Doe, Defendants/Appellees.**

Supreme Court of Tennessee,
at Nashville.

June 5, 1995.

Ben Boston, Christopher V. Sockwell, Boston, Bates & Holt, Lawrenceburg, for appellant.

Overton Thompson, III, Stephen H. Price, Farris, Warfield & Kanaday, Nashville, for appellees.

David L. Raybin, Hollins, Wagster & Yarbrough, P.C., Nashville, for amicus curiae, Fraternal Order of Police.

Robert H. Watson, John C. Duffy, Watson, Hollow & Reeves, Knoxville, for amicus curiae, Tenn. Municipal League.

Phillip A. Noblett, William Shelley Parker, Jr., Chattanooga, for amicus curiae, City of Chattanooga, Tenn.

J. Anthony Farmer, Lynn Bergwerk, Farmer & Bergwerk, Knoxville, for amicus curiae, Tenn. Trial Lawyers Ass'n.

## OPINION

ANDERSON, Chief Justice.

The issue presented in this appeal is whether a police officer owes a duty of care to a third party injured by a drunk driver whom the police officer has failed to arrest.

Relying upon the public duty doctrine which shields public employees from such actions, the trial court dismissed the action for failure to state a claim upon which relief can be granted, and the Court of Appeals—in a split decision—affirmed the dismissal. We granted the plaintiff's application for permission to appeal, and now affirm the Court of Appeals' judgment, because we conclude that the public duty doctrine was not abolished by the Tennessee Governmental Tort Liability Act, and that sound policy reasons warrant its continuance.

## BACKGROUND

■ Because the plaintiff's action against the defendants was dismissed for failure to state a claim upon which relief can be granted, we are required to take the facts as stated in the complaint to be true.[1] They are as follows:

On March 1, 1991, James Hillis and Donna Blankenship were drinking at the Boondocks' Saloon in the City of Elkton in Giles County, Tennessee. At approximately 8:45 p.m., Blankenship left the bar and entered her automobile in the parking lot of the Boondocks' Saloon. She was approached by Chief William Adams of the Elkton Police Department, who asked her to step out of the car. When Blankenship stepped out of the car, Chief Adams concluded that she was too intoxicated to drive. At that point, Hillis came out of the bar and volunteered to drive Blankenship home in her car. According to the plaintiff's complaint, Chief Adams allowed Hillis to drive away in the car when he knew, or should have known, that Hillis was also intoxicated.

Approximately one hour later, Hillis, while driving Blankenship's black Chevrolet Cavalier on the wrong side of the road with the headlights off, collided head-on with a pickup truck on U.S. Highway 31. As a result of the collision, one passenger in the truck, the plaintiff, Kimberly Ezell, was seriously injured, and another passenger, her husband, Tarrence Ezell, was killed. Hillis was also killed in the collision.

Thereafter, Kimberly Ezell, sued the City of Elkton, Chief Adams, and others on various theories of negligence. One theory the complaint alleged was that Chief Adams was negligent because he allowed Hillis to drive an automobile when he knew, or should have known, that Hillis was intoxicated. Specifi-

---

1. *Owens v. Foote*, 773 S.W.2d 911, 913 (Tenn. 1989); *Gordon v. City of Henderson*, 766 S.W.2d 784, 787 (Tenn.1989).

cally, the complaint alleged that Chief Adams breached a duty owed to the plaintiff when he failed to arrest Hillis and Blankenship for driving under the influence or for public intoxication, and as a consequence of that breach, the plaintiff was injured and her husband killed. The complaint also alleged that Chief Adams's actions "were in violation of the rights of the decedent, Tarrence Ray Ezell, under the laws of the Constitution of the United States and particularly the Fourteenth Amendment thereof and 42 U.S.C.A. § 1983."

The City of Elkton and Chief Adams moved to dismiss, asserting that the plaintiff had failed to state a cause of action for negligence because a police officer's duty to arrest or detain drunk drivers is to the public generally and not to individual members of the public. The defendants also sought dismissal of the Section 1983 claim, contending that simple negligence resulting in an unintended deprivation of a right protected by the Fourteenth Amendment is not actionable under 42 U.S.C.A. § 1983.

The trial court granted the defendants' motion to dismiss, and in a 2 to 1 decision, the Court of Appeals affirmed, concluding that the public duty doctrine was not abrogated by passage of the Governmental Tort Liability Act, and determining that no "special-duty" of care was owed in this case. We granted the plaintiff's application for permission to appeal, and for the reasons articulated below, now affirm the Court of Appeals' judgment.

### PUBLIC DUTY DOCTRINE

■ The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large. Kelly M. Tullier, *Governmental Liability for Negligent Failure to Detain Drunk Drivers*, 77 Cornell L.Rev. 873, 886 (1992). The doctrine can be traced

to the United States Supreme Court's decision in *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855), which held that a sheriff is not liable for failing to protect a kidnap victim because the sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." *Id.* at 403.

Thereafter, the public duty doctrine was widely accepted by most state courts,[2] including Tennessee, where one of the earliest applications of the doctrine occurred in *Irvine v. Chattanooga*, 101 Tenn. 291, 47 S.W. 419 (1898). There, this Court held that a city is not liable to a citizen whose home is destroyed by fire through the negligence or inefficiency of the city's fire department because the duty to extinguish fires is a public one, not owed to any individual in particular. *See also State to use of Cardin v. McClellan*, 113 Tenn. 616, 625, 85 S.W. 267, 269 (1905); *Cary v. Brown*, 3 Tenn.Civ.App. (Higgins) 399, 401–02 (1912).

The most recent statement of the public duty doctrine by this Court was in *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn.1975), where we wrote:

It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally. (Citations omitted.)

■ As we have often recognized, the imposition of a duty in any negligence action reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct. *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993).

A number of public policy considerations have been advanced to explain and support adoption of the public duty doctrine. *See generally*, Note, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv. L.Rev. 821, 832–35 (1981). One policy con-

**2.** *See Leake v. Cain*, 720 P.2d 152, 155 (Colo. 1986) (quoting, Thomas M. Cooley, *A Treatise on*        *the Law of Torts*, 379 (1879)); 77 Cornell L.Rev. at 887.

sideration frequently expressed is that individuals, juries and courts are ill-equipped to judge governmental decisions as to how particular community resources should be or should have been allocated to protect individual members of the public. *See, e.g., Morgan v. District of Columbia*, 468 A.2d 1306, 1311 (D.C.App.1983). Some courts have theorized that severe depletion of those resources could well result if every oversight or omission of a police official resulted in civil liability. *Id.* They have also observed that such a rule would place police officials in the untenable position of insuring the personal safety of every member of the public, or facing a civil suit for damages, and that the public duty doctrine eliminates that dilemma. *See Landis v. Rockdale County*, 212 Ga.App. 700, 445 S.E.2d 264, 268 (1994) (where the Georgia Court of Appeals applied the public duty doctrine and stated that "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause or being mulcted in damages if he does.").

Another policy consideration justifying recognition of the public duty doctrine is that police officials often act and react in the milieu of criminal activity where every decision is fraught with uncertainty. *Morgan v. District of Columbia*, 468 A.2d at 1311. Illustrative of that approach was the Connecticut Supreme Court's endorsement of the public duty doctrine in a failure-to-arrest case:

> [t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Should the officer try to avoid liability by removing from the road all persons who pose any potential hazard, he may find himself liable in many instances for false arrest. We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all.

*Shore v. Town of Stonington*, 187 Conn. 147, 444 A.2d 1379, 1384 (1982).

Finally, many courts subscribing to the public duty doctrine have emphasized that mechanisms, other than civil negligence actions, exist wherein individual officials may be held accountable for dereliction of duty, for instance, internal disciplinary proceedings or formal criminal prosecutions. *Morgan v. District of Columbia*, 468 A.2d at 1312. Such courts have concluded that, on balance, the community is better served by a policy that both protects the exercise of law enforcement discretion and affords a means of review by supervisory personnel who are best able to evaluate the officer's alleged negligent behavior. *Id.*

Many of the public policy considerations relied upon to support recognition and retention of the public duty doctrine have also been advanced in support of the doctrine of governmental immunity, which has been abolished or modified by statutes in most states, including Tennessee. *See* Tenn.Code Ann. §§ 29–20–101, et seq. In the wake of these statutes, the public duty doctrine has come under criticism from some commentators who view the doctrine as governmental immunity under another guise.[3] Moreover, some courts have abandoned the doctrine, citing, among other things, its inconsistency with statutes modifying or abolishing governmental immunity.[4]

---

3. *See, e.g.,* 77 Cornell L.Rev. at 887.

4. *Adams v. State*, 555 P.2d 235, 241–42 (Alaska 1976); *Ryan v. State*, 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982); *Leake v. Cain, supra; Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010, 1015 (Fla.1979); *Wilson v. Nepstad*, 282 N.W.2d 664, 671 (Iowa 1986); *Jean W. v. Commonwealth*, 414 Mass. 496, 610 N.E.2d 305, 308 (1993); *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254, 257 (1986); *Schear v.*

*Board of County Com'rs of Bernalillo County*, 101 N.M. 671, 673–74, 687 P.2d 728, 730–31 (1984); *Brennen v. City of Eugene*, 285 Or. 401, 591 P.2d 719, 724–25 (1979); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132, 139 (1976). (Courts abolishing the doctrine have also said that it produces unpredictable results in practice and is unfair in that it imposes upon individuals, rather than society as a whole, the burden of a public employee's negligence.)

Nevertheless, a clear majority of jurisdictions continue to adhere to the public duty doctrine, despite the passage of statutes modifying or abolishing the doctrine of governmental immunity, concluding that, in both law and policy, the rule is sound and necessary.[5]

Although the continuing viability of the public duty doctrine, has been the topic of discussion in a large number of decisions from other jurisdictions, no reported Tennessee case has addressed the issue since enactment of the Tennessee Governmental Tort Liability Act,[6] in 1973.[7] The plaintiff urges us to hold that the doctrine was abolished by passage of the Act.

The Tennessee Governmental Tort Liability Act ("the Act"), reaffirms the general rule of immunity from suit for governmental entities, and expressly extends the common-law immunity to proprietary functions. Tenn. Code Ann. § 29–20–201 (1980 & Supp.1994); *Gordon v. City of Henderson,* 766 S.W.2d at 786.

■ Immunity is then waived by the Act in limited and enumerated instances for certain injuries.[8] The limited waiver of governmental immunity provided for in the Act is in clear derogation of the common law. *Austin v. Shelby County,* 640 S.W.2d 852, 854 (Tenn. App.1982). Generally, statutes in derogation of the common law are to be strictly construed and confined to their express terms, *Cardwell v. Bechtol,* 724 S.W.2d 739, 744 (Tenn.1987), and that rule of construction has been expressly incorporated into the Act, which provides that "[w]hen immunity is removed by this chapter, any claim for damages must be brought in strict compliance with the terms of this chapter."[9]

■ This action was brought pursuant to the waiver of immunity contained in Tenn.

5. *Shearer v. Town of Gulf Shores,* 454 So.2d 978, 979 (Ala.1984); *Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983); *Shore v. Town of Stonington, supra; Morgan v. District of Columbia, supra; City of Rome v. Jordan,* 263 Ga. 26, 426 S.E.2d 861 (1993); *Namauu v. City and County of Honolulu,* 62 Haw. 358, 614 P.2d 943 (1980); *Ransom v. City of Garden City,* 113 Idaho 202, 743 P.2d 70 (1987); *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093 (1986); *Ashburn v. Anne Arundel County,* 306 Md. 617, 510 A.2d 1078, 1082 (1986); *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.1979); *State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536 (Mo.1988); *Phillips v. City of Billings,* 233 Mont. 249, 758 P.2d 772, 775 (1988); *Coty v. Washoe County,* 108 Nev. 757, 839 P.2d 97, 98–100 (1992); *Weldy v. Town of Kingston,* 128 N.H. 325, 514 A.2d 1257 (1986); *O'Connor v. City of New York,* 58 N.Y.2d 184, 460 N.Y.S.2d 485, 447 N.E.2d 33 (1983); *Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897 (1991); *Sawicki v. Village of Ottawa Hills,* 37 Ohio St.3d 222, 525 N.E.2d 468 (1988); *Barratt v. Burlingham,* 492 A.2d 1219, 1221–22 (R.I.1985); *Bellamy v. Brown,* 305 S.C. 291, 408 S.E.2d 219 (1991); *Hagen v. City of Sioux Falls,* 464 N.W.2d 396 (S.D.1990); *Bailey v. Town of Forks,* 108 Wash.2d 262, 737 P.2d 1257, 1259 (1987); *Randall v. Fairmont City Police Dept.,* 186 W.Va. 336, 412 S.E.2d 737 (1991); *Fessler by Fessler v. R.E.J., Inc.,* 161 Ill.App.3d 290, 112 Ill.Dec. 852, 514 N.E.2d 515 (1987), *appeal denied,* 118 Ill.2d 542, 117 Ill.Dec. 224, 520 N.E.2d 385 (1988); *Sports, Inc. v. Gilbert,* 431 N.E.2d 534, 539 (Ind.App.1982); *Ashby v. City of Louisville,* 841 S.W.2d 184, 189–90 (Ky.App.1992); *Kniepp v. City of Shreveport,* 609 So.2d 1163 (La.App.1992); *Makris v. City of Grosse Pointe Park,* 180 Mich.App. 545, 448

N.W.2d 352, 359 (1989), *appeal denied,* 436 Mich. 872, 463 N.W.2d 709 (1990); *Morris v. Musser,* 84 Pa.Cmwlth. 170, 478 A.2d 937 (1984); *see generally,* John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty was Owed Under Circumstances,* 38 A.L.R.4th 1194, § 3, 1197–1202 (1985 & Supp.1994) (hereafter "38 A.L.R.4th at § ——, ——."); James L. Isham, Annotation, *Failure to Restrain Drunk Driver As Ground of Liability of State or Local Government Unit or Officer,* 48 A.L.R.4th at § 3, 329–32 (1986 & Supp.1994) (hereafter 48 A.L.R.4th at § ——, ——.).

6. Tenn.Code Ann. §§ 29–20–101 through 29–20–407 (1980 & Supp.1994).

7. This Court has noted on at least two occasions that the public duty doctrine "may be affected to some extent by the Tennessee Governmental Tort Liability Act." *Gordon v. City of Henderson,* 766 S.W.2d at 786–87; *Fulenwider v. Firefighters Ass'n Local Union 1784,* 649 S.W.2d 268, 269 (Tenn.1982). The issue was not squarely presented in either of those cases, however, and we have not since addressed it. The Court of Appeals' decision in this case was based primarily on two earlier unpublished intermediate court decisions, one in which permission to appeal was denied concurring in results only, and the other in which permission to appeal was not requested.

8. *See e.g.,* Tenn.Code Ann. § 29–20–202 through § 29–20–204 (1980 & Supp.1994).

9. Tenn.Code Ann. § 29–20–201(c) (1980 & Supp. 1994).

Code Ann. § 29–20–205 (1980 & Supp.1994), which provides that:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment **except if the injury:**

(1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;

(2) Arises out of false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;

(3) Arises out of the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;

(4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;

(5) Arises out of the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;

(6) Arises out of misrepresentation by an employee whether or not such is negligent or intentional;

(7) Arises out of or results from riots, unlawful assemblies, public demonstrations, mob violence and civil disturbances; or

(8) Arises out of or in connection with the assessment, levy or collection of taxes.

(Emphasis added.)

The public duty doctrine is not expressly listed as an exception to the waiver of immunity for injuries resulting from negligent acts or omissions of governmental employees; however, the duty of care historically imposed upon such employees is not redefined by the statute. Consequently, that standard of care remains the same. Moreover, the overall statutory scheme supports continued recognition of the doctrine. Unlike the statutes in those jurisdictions which have abandoned the public duty doctrine, the Tennessee Governmental Tort Liability Act does not abolish governmental immunity. *See e.g. Wilson v. Nepstad,* 282 N.W.2d at 669; *Brennen v. City of Eugene,* 591 P.2d at 725. Instead, the Tennessee Act reaffirms and codifies the general rule of immunity for governmental entities, and in fact, extends the rule of immunity beyond its common law scope to proprietary functions.

Although, as the plaintiff points out, the Legislature has waived immunity in the Act for some activities that were protected at common law by the public duty doctrine,[10] many of the governmental activities traditionally shielded by the public duty doctrine are expressly excepted from the limited waiver of immunity for negligent acts or omissions of governmental employees, under which the plaintiff brought this lawsuit. *See* Tenn.Code Ann. § 29–20–205(1) (exercise or performance of a discretionary function);[11] –205(3) (issuance of licenses); –205(4) (failure to inspect); –205(7) (civil unrest); and –205(8) (tax collection). Accordingly, we are not persuaded that the Tennessee Governmental Tort Liability Act, which actually reiterates and extends the rule of governmental immunity, abolished, or was intended to abolish, the longstanding common-law public duty doctrine.

Moreover, we are in agreement with the courts which have identified valid policy considerations which warrant continued judicial application of the public duty doctrine. We conclude that the doctrine serves the impor-

---

10. *See e.g.* Tenn.Code Ann. § 29–20–203 (removes immunity for injury from unsafe streets and highways, overruling *Cary v. Brown, supra);* Tenn.Code Ann. § 29–20–202 (removes immunity for injury from negligent operation of motor vehicles overruling *Burnett v. Rudd,* 165 Tenn. 238, 54 S.W.2d 718 (1932)).

11. The City of Chattanooga, in its *amicus curiae* brief, urges us to hold that the defendants in this action are immune from suit because a police officer's decision of whether or not to arrest is a discretionary function. That issue was not raised by the parties, nor considered by the courts below, and we decline to consider it for the first time in this Court.

tant purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion. As we observed in *State v. Jefferson*, 529 S.W.2d 674, 689 (Tenn.1975), "[i]t is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws...." *See also, Barratt v. Burlingham*, 492 A.2d at 1222; *Ashburn v. Anne Arundel County*, 510 A.2d at 1084; *Fessler by Fessler v. R.E.J., Inc.*, 514 N.E.2d at 522; *see generally*, 38 A.L.R.4th at § 3, 1197–1202. Finally, public forms of redress, other than civil actions, exist in Tennessee, as in most other states, to insure that officers who fail to faithfully perform their duties are accountable. Internal disciplinary policies, criminal sanctions, and in the case of publicly elected law enforcement officials, ouster proceedings, are alternative forms of redress. *See* Tenn.Code Ann. § 38–8–301 to § 38–8–309 (1991); Tenn. Code Ann. § 39–16–401 to § 39–16–406 (1991); Tenn.Code Ann. § 8–47–101 to § 8–47–126 (1993). We think that on balance, the State is better served by a policy that both protects the exercise of law enforcement discretion and provides accountability for failure to perform a duty.

However, our conclusion that the public duty doctrine was not abolished by the Governmental Tort Liability Act and that sound policy reasons support its continuance does not end the inquiry in this case. Rather, it requires that we go further and determine whether the facts alleged establish an exception to the public duty doctrine.

### *SPECIAL DUTY EXCEPTION*

States adhering to the public duty doctrine, including Tennessee, have recognized an exception to the rule of no-liability that applies where a "special relationship" exists between the plaintiff and the public employee, which gives rise to a "special duty" that is more particular than the duty owed by the employee to the public at large. *See e.g., Bennett v. Stutts*, 521 S.W.2d at 576–77; *Hale v. Johnston*, 140 Tenn. 182, 199–200,

203 S.W. 949, 953 (1918);[12] *State to use of Cardin v. McClellan*, 113 Tenn. at 625, 85 S.W. at 269–70; *Cox v. State*, 844 S.W.2d 173, 175 (Tenn.App.1992); *Cary v. Brown, supra; see also, Shore v. Town of Stonington*, 444 A.2d at 1382–83; *Morgan v. District of Columbia*, 468 A.2d at 1312–13; *Barratt v. Burlingham*, 492 A.2d at 1221; *Landis v. Rockdale County*, 445 S.E.2d at 266.

While the "special duty" exception is recognized by most jurisdictions applying the public duty rule, the test varies from jurisdiction to jurisdiction. *See, generally* 48 A.L.R.4th at §§ 3 and 6.

For example, in Maryland, the exception applies when 1) the local government affirmatively acted to protect the specific victim, thereby inducing the victim's specific reliance upon the police protection; or when 2) an ongoing custodial relationship between the police officer and the person who caused harm to the plaintiff imposed upon the police officer a duty to prevent the person from causing harm to the plaintiff. *Ashburn v. Anne Arundel County*, 510 A.2d at 1085; *see also* Restatement (Second) of Torts § 315.

A somewhat different approach applies in Illinois, where four elements comprise the "special duty" exception: (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts or omissions on the part of the municipal employees must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. *Fessler by Fessler v. R.E.J., Inc.*, 514 N.E.2d at 519.

Georgia, New York, and Ohio courts follow the same rule and will apply the "special-duty" exception when the following requirements are established:

(1) an explicit assurance by the [governmental unit], through promises or actions, that it would act on behalf of the injured party;

---

**12.** Overruled on other grounds by *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992).

(2) knowledge on the part of the [governmental unit] that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the [governmental unit's] affirmative undertaking. *Landis v. Rockdale County,* 445 S.E.2d at 266; *see also Cuffy v. City of New York,* 69 N.Y.2d 255, 513 N.Y.S.2d 372, 374–75, 505 N.E.2d 937, 940 (1987); *Sawicki v. Village of Ottawa Hills,* 525 N.E.2d at 478.

The "special-duty" exception is applied by the District of Columbia courts when 1) police employ an individual in aid of law enforcement; or 2) officials, by their actions, affirmatively undertake to protect an individual, and the individual relies upon the undertaking; or 3) statutes or regulations mandate protection of a particular class of individuals, of which the plaintiff is a member, and the plaintiff relies upon the statute or regulation. *Morgan v. District of Columbia,* 468 A.2d at 1315.

Rather than formulating factors to consider, the Connecticut Supreme Court, has delineated general situations in which the special-duty exception applies, which include: 1) circumstances where it is apparent to the public officer that his failure to act will likely subject an identifiable person to imminent harm; 2) situations in which a statute specifically provides for a cause of action against an official or municipality for failure to enforce certain laws; 3) complaints in which the plaintiff alleges a cause of action involving malice, wantonness, or intent, rather than negligence; or 4) instances when officials have received aid from the individual in apprehending criminals. *Shore v. Town of Stonington,* 444 A.2d at 1382–83.

Although no Tennessee case contains a comprehensive analysis of the factors neces-sary to establish the "special duty" exception, the exception has been applied by this Court where officials have affirmatively undertaken to protect an individual and the individual relies upon the undertaking,[13] and where a statute specifically authorizes a cause of action for injuries resulting from a particular type of negligent conduct to a particular class of individuals, of which the plaintiff is a member.[14] For example, our recent case of *Haynes v. Hamilton County,* 883 S.W.2d 606 (Tenn.1994), involved a statute which specifically authorized a negligence cause of action against law enforcement personnel whose negligent conduct causes injury to innocent third parties in a high-speed chase. Although the issue was statutory interpretation and the public duty doctrine was not raised, we note that under the circumstances of that case, the "special-duty" exception would apply. *See* Tenn.Code Ann. § 55–8–108(e) (1993).

■ Having decided that the public duty doctrine is viable, we consider it both desirable and necessary to retain, and further refine, the "special-duty" exception. After considering the various formulations of the doctrine, we conclude that a special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct. Applying that analysis to the facts presumed to be true in this case, we conclude

---

**13.** *See Hale v. Johnston, supra,* in which the exception was applied to allow suit by the representatives of a city prisoner who was killed while housed in the county workhouse pursuant to a contract between the city and the county that required the prisoners to be "guarded and taken care of in every way by the county." Although, as was previously discussed, the public duty doctrine was not at issue in *Gordon v. City of Henderson, supra,* the Court's refusal to uphold the dismissal is consistent with the public duty doctrine, because, in that case the plaintiffs alleged that the firefighters arrived at the scene, began fighting the fire, but were unable to do so effectively due to negligence and intoxication. Such allegations establish the "special-duty" exception discussed in *Hale.*

**14.** *See Cox v. State, supra* (Suit allowed where statute authorized the recovery of damages resulting from state's "[n]egligent care, custody and control of persons."); *see also Cary v. Brown, supra* (generally discussing the applicability of the exception under such circumstances).

that the Court of Appeals correctly affirmed the trial court's dismissal of the complaint.

■ The plaintiff's allegations do not support application of a "special-duty" of care. Neither Chief Adams nor the City of Elkton had, by their actions, affirmatively undertaken to protect the plaintiff. In fact, Chief Adams never had any contact with the plaintiff; thus, the defendants had taken no action which would have caused the plaintiff to particularly rely upon them for protection.

■ The plaintiff argues, however, that certain statutes impose a special duty upon the police chief and authorize a negligence action for their violation. The plaintiff relies upon Tenn.Code Ann. § 55–10–401, making it unlawful to drive on public roads while under the influence of an intoxicant, and upon Tenn.Code Ann. § 39–17–310, making it a crime for any person to appear in a public place under the influence of an intoxicant. The plaintiff argues that Chief Adams was charged by statute "to faithfully maintain and enforce ... the ... laws relating to ... drunkenness, ... by having arrested ... all persons violating such laws with their knowledge...." Tenn.Code Ann. § 6–54–401 (1992). *See also* Tenn.Code Ann. § 6–21–602 (1992); Tenn.Code Ann. § 40–7–103(a)(1) (1990 & Supp.1994). That statute, the plaintiff argues, imposes upon Chief Adams a "special-duty" to arrest known violators of the laws pertaining to drunk driving and public intoxication, and authorizes a negligence action to recover for injuries sustained as a result of Chief Adams failure to perform that "special-duty."

We disagree. The statutes relied upon only delineate the general authority and responsibility of police officers. Tenn.Code Ann. § 40–7–103(a)(1) is permissive and provides that "[a]n officer may, without a warrant, arrest a person [f]or a public offense committed or a breach of the peace threatened in the officer's presence." (Emphasis added.) Such statutes neither impose a mandatory duty to arrest every motorist suspected of driving under the influence, nor authorize negligence actions against police officers who do not arrest every suspected drunk driver.

We agree with the Rhode Island Supreme Court's conclusion that if we were "to hold otherwise, officers trying to avoid liability might be compelled to remove from the road all persons who pose any potential hazard and, in doing so, might find themselves subject, in many instances to charges of false arrest." *Barratt v. Burlingham,* 492 A.2d at 1222. Such a broad rule of potential liability would hamper a police officer's ability to effectively enforce the law, and might also result in unwarranted arrests, thereby infringing upon the constitutional rights of motorists. Accordingly, we join the clear majority of courts and conclude that statutes pertaining to drunk driving and public intoxication, do not, in conjunction with statutes authorizing warrantless arrests, give rise to a "special-duty" of care where a plaintiff alleges that a police officer failed to arrest or detain an alleged drunk driver. *Shore v. Town of Stonington, supra; Ashburn v. Anne Arundel County, supra; Phillips v. City of Billings, supra, Coty v. Washoe County, supra, Barratt v. Burlingham, supra; Lehto v. City of Oxnard,* 171 Cal.App.3d 285, 217 Cal.Rptr. 450, 456 (1985); *Landis v. Rockdale County, supra; Fessler by Fessler v. R.E.J., Inc., supra; Sports, Inc. v. Gilbert, supra; Fusilier v. Russell,* 345 So.2d 543 (La.App.), *appeal denied* 347 So.2d 261 (La. 1977); *Makris v. City of Grosse Pointe Park, supra; Jackson v. City of Wentzville,* 844 S.W.2d 585, 588 (Mo.App.1993); *Stewart v. Hubbard,* 72 Ohio App.3d 301, 594 N.E.2d 662, 665 (1991); *see generally,* 48 A.L.R.4th 3, § 329–32. *But see Ransom v. City of Garden City, supra; Fudge v. City of Kansas City, supra; Weldy v. Town of Kingston, supra;* 48 A.L.R.4th at § 6,320.

We note briefly that the other circumstance we have adopted justifying application of a "special-duty" of care does not exist in this case. The plaintiff has not alleged intentional, malicious or reckless conduct. The allegations establish only simple negligence. Accordingly, for the reasons previously discussed, the plaintiff's argument regarding application of the "special-duty" of care exception is without merit.

## SECTION 1983 ACTION

■ Lastly, we consider whether the Court of Appeals was correct in sustaining the trial court's dismissal of the plaintiff's alleged 42 U.S.C.A. § 1983 action. In *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989), the United States Supreme Court held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" of the Fourteenth Amendment. Moreover, in *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the United States Supreme Court held that an allegation of simple negligence which causes only an unintended loss of or injury to life, liberty, or property, cannot be maintained under Section 1983. We agree with the Court of Appeals that the allegations in the plaintiff's complaint, taken as true, amount to simple negligence, and allege only that she was not protected from harm by a private actor. Therefore, we conclude that the plaintiff has not alleged a cause of action under 42 U.S.C.A. § 1983, and affirm the Court of Appeals' judgment on this issue.

### CONCLUSION

We conclude that the public duty doctrine survived enactment of the Tennessee Governmental Tort Liability Act, and that sound public policy supports its continued application in Tennessee, as well as the continuing validity of the "special-duty" of care exception to the doctrine. We have determined that the "special-duty" exception does not apply in this case. Accordingly, we affirm, in all respects, the Court of Appeals' judgment affirming the trial court's dismissal of the plaintiff's action against Chief Adams and the City of Elkton. Costs of this appeal are taxed to the plaintiff.

DROWOTA, REID and BIRCH, JJ., and O'BRIEN, Special Justice, concur.