IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

FILED

August 26, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STEVE ELDRIDGE and wife,      )
LORI ELDRIDGE,                )
                             )
        Plaintiffs/Appellees, )  Gibson Circuit No. 7093
                             )
VS.                          )  Appeal No. 02A01-9503-CV-00041
                             )
THE CITY OF TRENTON,          )
                             )
        Defendant/Appellant.  )


APPEAL FROM THE CIRCUIT COURT OF GIBSON COUNTY
AT TRENTON, TENNESSEE
THE HONORABLE DICK JERMAN, JR., JUDGE


PAUL F. RICE
UTLEY & LATIMER, PC
Jackson, Tennessee
Attorney for Appellant


T. J. EMISON, JR.
Alamo, Tennessee
ROBERT KINTON
Trenton, Tennessee
Attorneys for Appellee


REVERSED AND DISMISSED


ALAN E. HIGHERS, J.


CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

In this personal injury action, Steve Eldridge ("Plaintiff") and his wife, Lori Eldridge

("Wife"), filed suit against the City of Trenton ("Defendant") for injuries and damages sustained when Plaintiff was shot in the face by an armed robber while working as a clerk in a liquor store. Prior to Plaintiff's injury, the Trenton Police Department received a tip from the Gibson County sheriff that one of the three liquor stores in Trenton would be "hit" by a particular individual. Because the Trenton Police Department did not warn the owner of the liquor store at which Plaintiff worked or any of the store's employees of the tip it received from the Gibson County sheriff, Plaintiffs based their suit upon negligence and failure to warn theories. The trial court granted summary judgment in favor of Defendant on all issues contained within the complaint, with the exception of Plaintiffs' allegation regarding the Trenton Police Department's duty to warn Plaintiff of the sheriff's tip. After a bench trial, the trial court awarded Plaintiff $130,000 and awarded Wife $25,000. Defendant appeals this judgment, arguing that the trial court erred in rejecting its defense of governmental immunity. For the reasons stated hereafter, we reverse the judgment of the trial court.

**FACTS**

On Friday, December 25, 1992, the Gibson County Sheriff, Joe Shepard, called the Trenton Police Department twice stating that he had received a tip from a reliable informant that Vincent Anderson ("Anderson") had probably been involved in a pawn shop burglary on December 24, 1992, and that Anderson would also probably "hit" one of the three liquor stores in Trenton, Tennessee, sometime between Christmas Day and New Year's Day for the purpose of getting cash to get out of town.

After receiving this tip from Sheriff Shepard, the Chief of the Trenton Police Department, Thomas Litton ("Litton"), implemented a system whereby additional routine, periodic checks of the three Trenton liquor stores were made in order to more closely monitor the stores' activities. The Trenton Police Department assigned a number to each of the three Trenton liquor stores: one, two, and three. As the Trenton Police Department made periodic checks of these stores, the checks were logged in to the Department's records as routine check one, two, and three. These numbers were assigned to the three

2

stores so that the stores could be checked and recorded by the Trenton Police Department without placing the stores' names out over the scanners for members of the public to hear.

The Trenton Police Department, however, did not warn any of the three Trenton liquor stores' owners or employees of the tip it received regarding the potential "hit" of one of the stores. The Trenton Police Department decided not to warn the owners or employees of the three Trenton liquor stores of the tip because the Police Department determined that the potential "hit" of one of the stores would be a burglary instead of a robbery. Chief Litton testified that he made this determination after consideration of the following factors: the Trenton Police Department received the tip on a holiday; Anderson was suspected of a pawn shop burglary which occurred one day before the Trenton Police Department received the tip; and Anderson's past criminal history and background involved burglaries rather than robberies. Chief Litton also determined that, if a burglary was going to occur, Christmas Day would be a prime day for the burglary because the stores would be closed on that day.

In support of the decision not to warn the owners or employees of the three Trenton liquor stores, Chief Litton also testified that there are certain inherent risks involved in issuing a general warning to employees of a store in response to a tip received by the Police Department. Such risks include the possibility that untrained, armed employees could inadvertently injure or kill innocent citizens or police officers. Chief Litton further opined that there would be a greater chance of a confrontation occurring if a general warning was given to store employees of a potential "hit."

On Monday, December 28, 1992, at approximately 9:00 p.m., Anderson entered the House of Spirits, one of the three liquor stores in Trenton, where Plaintiff was working as a clerk. In the course of committing an armed robbery, Anderson shot Plaintiff in the face, severely injuring him.

Sometime during the 1980's prior to Plaintiff's accident, Plaintiff and Wife owned and operated The Party Shoppe, a mini-convenience store located in Trenton. Plaintiff testified that, during his ownership of The Party Shoppe, the Trenton Police Department warned him on various occasions of criminal activity in the area. Wife also testified that she could remember one occasion when the Trenton Police Department warned her and Plaintiff that a robbery had occurred in Milan, that the criminals had not been apprehended, and that she and Plaintiff should take safety precautions.

**LAW**

On appeal, Defendant raises the following issues for this Court's review:

1) Whether the trial court erred in holding that the Trenton Police Department has a duty to warn potential crime victims of anonymous tips received by the Police Department; and

2) Whether the trial court erred in denying discretionary function immunity pursuant to T.C.A. § 29-20-205 to the City of Trenton for the Trenton Police Department's handling of an anonymous tip it received.

Plaintiffs also have appealed, arguing that the trial court erred in awarding Wife $25,000 for her loss of consortium claim instead of the statutory limit of $130,000.

**PUBLIC DUTY DOCTRINE**

Prior to the passage of the Tennessee Governmental Tort Liability Act, a municipality and its police and fire departments generally were immune from suit by a private individual based upon the principle that duties of municipal corporations in furnishing police and fire protection were general duties owed to the public at large and not special duties owed to a private individual. See Gordon v. City of Henderson, 766 S.W.2d 784, 785-86 (Tenn. 1989); see also Fulenwider v. Firefighters Ass'n Local Union 1784, 649 S.W.2d 268, 269-70 (Tenn. 1982) (stating that city is not liable in private damage suit to individual citizens for failure to furnish adequate police or fire protection); Burnett v. Rudd, 54 S.W.2d 718 (Tenn. 1932); Irvine v. City of Chattanooga, 47 S.W. 419 (Tenn. 1898). This principle is commonly referred to as the public duty doctrine.

4

The public duty doctrine, which originated at common law, shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large. Ezell v. Cockrell, 902 S.W.2d 394, 397 (Tenn. 1995) (citing Kelly M. Tullier, Governmental Liability for Negligent Failure to Detain Drunk Drivers, 77 Cornell L. Rev. 873, 886 (1992)). This doctrine can be traced to the United States Supreme Court's decision in South v. Maryland, 59 U.S. (18 How.) 396 (1855), wherein the Supreme Court held that a sheriff was not liable for failing to protect a kidnap victim because the sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." South, 59 U.S. at 403.

In addressing the duty owed by law enforcement officers to individuals within the community, this Court has stated:

> The duty of a law enforcement officer to preserve the peace and arrest lawbreakers is one which the officer owes to the public generally, rather than to particular individuals, and the breach of such duty creates no liability on the part of the officer to an individual who is damaged as a result of the officer's failure to perform it.
> *　　　*　　　*
> In the absence of special circumstances, there is no duty resting upon a municipality or other governmental body to provide police protection to any particular person, and it may not be held liable for its failure to do so.

Seidner v. Metropolitan Gov't, No. 01A01-9012-CV-00451, 1991 WL 66440, at *4 (Tenn. App. May 1, 1991) (quoting 70 Am. Jur. 2d *Sheriffs, Police, and Constables* § 94; 57 Am. Jur. 2d *Municipal, School, and State Tort Liability* § 444), *perm. app. denied* (Tenn. Sept. 9, 1991).

In Ezell v. Cockrell, 902 S.W.2d 394 (Tenn. 1995), the supreme court addressed the application of the public duty doctrine in light of the legislature's passage of the Tennessee Governmental Tort Liability Act. In Ezell, the plaintiff's husband was killed and the plaintiff was seriously injured by an intoxicated driver. Ezell, 902 S.W.2d at 396. Earlier in the evening, the police chief of the City of Elkton had permitted the driver to operate an intoxicated friend's car when the police chief allegedly knew, or should have known, that

5

the driver was also intoxicated. Id. The plaintiff sued the City of Elkton and its police chief based on the police chief's negligence in failing to arrest the intoxicated driver. Id. at 396-97. Reaffirming the viability of the public duty doctrine, the court concluded that the City could not be held liable for the police chief's failure to arrest the intoxicated driver. Id. at 404.

Various public policy considerations have been advanced to explain and support the adoption of the public duty doctrine. One public policy consideration advanced is that individuals, juries, and courts are ill-equipped to judge governmental decisions as to how specific community resources should be or should have been allocated to protect individual members of the public. Ezell, 902 S.W.2d at 397-98 (citing Morgan v. District of Columbia, 468 A.2d 1306, 1311 (D.C. 1983)). A second factor favoring application of the public duty doctrine is the depletion of municipal resources that would result if every oversight or omission of a police official resulted in civil liability. Ezell, 902 S.W.2d at 397-98. A third factor justifying application of the public duty doctrine involves recognition of the fact that, without the application of such doctrine, police officers continually would be faced with the precarious dilemma of deciding between whether to avoid liability for personal injury by arresting all persons who pose any potential threat to the public or whether to avoid liability for false imprisonment by not arresting those persons. Id. The public duty doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion." Id. at 400-01; see also State v. Jefferson, 529 S.W.2d 674, 689 (Tenn. 1975) (stating that it is essential to protection of society that wide discretion be vested in officers chosen to enforce our laws).

In the present case, we conclude that the evidence presented at trial brings the actions of Defendant and the officers of the Trenton Police Department within the scope of the public duty doctrine of governmental immunity. Plaintiffs' theory of recovery was that the Trenton Police Department breached its duty to warn Plaintiff of a potential crime at his place of business. The duty of the Trenton Police Department to protect Plaintiff from crime falls within the Police Department's general duty to preserve the peace, arrest lawbreakers,

and provide police protection. Because this duty is owed to the public generally, rather than to particular individuals, based upon the application of the public duty doctrine, we hold that Defendant is not liable for the Trenton Police Department's failure to warn Plaintiff. See Green v. Denison, 738 S.W.2d 861, 866 (Mo. 1987) (holding that, under public duty doctrine, police officers could not be held liable for officers' failure to warn residents of apartment building that officers were entering building to arrest gunman).

## SPECIAL DUTY EXCEPTION

In adhering to the public duty doctrine in Ezell, the supreme court recognized the continuing viability of the special duty exception to the public duty doctrine's no-liability rule. Ezell, 902 S.W.2d at 401. The special duty exception applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." Id. In Ezell, the court further refined the special duty exception to the public duty doctrine and concluded that the application of the exception should be limited to the following three situations:

> 1) [When] officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;
>
> 2) [When] a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or
>
> 3) [When] the plaintiff alleges a cause of action involving intent, malice, or reckless conduct.

Id. at 402.

Despite its recognition of the special duty exception to the public duty doctrine, the court concluded that the exception did not apply in Ezell. Regarding the first situation under the special duty exception, the court explained that:

> The plaintiff's allegations do not support application of a "special-duty" of care. Neither [the police chief] nor the City of Elkton had, by their actions, affirmatively undertaken to protect the plaintiff. In fact, [the police chief] never had any contact with the plaintiff; thus, the defendants had taken no action which would have caused the plaintiff to particularly rely

upon them for protection.

Ezell, 902 S.W.2d at 403. The court also rejected the plaintiff's argument that a special duty of care arose from certain statutes pertaining to drunk driving, public intoxication, and the general authority and responsibility of police officers to enforce laws and make arrests. The court reasoned that:

> Such statutes neither impose a mandatory duty to arrest every motorist suspected of driving under the influence, nor authorize negligence actions against police officers who do not arrest every suspected drunk driver.

Id. The court likewise concluded that the third situation under the special duty exception did not apply because the plaintiff's allegations did not establish intentional, malicious, or reckless conduct but, instead, established only simple negligence. Id.

Plaintiffs contend that the evidence presented at trial brings this action within the first special duty exception to the public duty doctrine. We respectfully disagree. Although the Trenton Police Department had increased its surveillance of the three liquor stores after receiving the tip from Sheriff Shepard regarding Anderson's potential "hit" of one of the stores, this action by the Police Department falls short of the first situation recognized under the special duty exception, under which officials, by their actions, must affirmatively undertake to protect a plaintiff and the plaintiff must rely upon the officials' undertaking. While the Trenton Police Department did increase its watch over the three liquor stores, no notice was given by the Police Department to any of the owners or employees of the liquor stores of either the fact that the Police Department had received a tip regarding a potential "hit" on one of the stores or the fact that the Police Department had increased its surveillance of the stores in response to the tip. Thus, neither Plaintiffs nor the owners or employees of any of the three liquor stores could have relied upon the Trenton Police Department's increased watch over the stores. See Hurd v. Woolfork, No. 02A01-9607-CV-00170, 1997 WL 224883, at *5 (Tenn. App. May 6, 1997) (concluding that public duty doctrine barred suit against sheriff for failure to execute arrest warrant on plaintiffs' neighbor where complaint failed to allege that plaintiffs relied upon sheriff to protect them from neighbor). Moreover, Plaintiff has failed to explain how he relied on the Police Department's past warnings of criminal activity in the area.

Inasmuch as Plaintiffs have been unable to establish the application of the special duty exception to the public duty doctrine, we adhere to our holding that the public duty doctrine bars this lawsuit. In light of our holding, we need not address the parties' remaining issues concerning discretionary function immunity and damages.

The judgment of the trial court is hereby reversed, and this cause is dismissed. Costs on appeal are taxed to Plaintiffs for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.