IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 19, 2007 Session

**JONATHAN FORD, minor, and CHRISTIE FORD, minor, by and through their Father and Next Friend, GILLIE FORD and GILLIE FORD, individually**

**and**

**KATHY FORD, Individually, and as Natural Mother and Next Friend of JERMAINE DELSHAWN FORD, Minor Deceased and as the Administratrix of the Estate of Jermaine Del Shaun Ford, and for the Use and Benefit of the Heirs at Law of JERMAIN DEL SHAUN FORD, Deceased**

**v.**

**THE NEW GREATER HYDE PARK MISSIONARY BAPTIST CHURCH OF MEMPHIS, TENNESSEE, STEVEN T. CORBIN, individually, WILLIE CORBIN, JR., individually, and STEVEN T. CORBIN and WILLIE CORBIN, JR., d/b/a WILLIE CORBIN ROOFING, JAMES GRAY III, individually, THE CITY OF MEMPHIS, TENNESSEE, a Governmental Entity, and SHELBY COUNTY GOVERNMENT, a Governmental Entity**

**and**

**LISA NELSON, individually and as the natural mother of and next of kin to KEISHA M. MITCHELL, deceased, REVEREND JAMES GRAY III, individually and as the husband of and next of kin to GWENDOLYN D. GRAY, deceased, REVEREND JAMES GRAY III, individually and as the natural father of and next of kin to WHITNEY D. GRAY, deceased, and JAMES MILLER, individually and as the next of kin of JERMAINE FORD, deceased, and BONNIE BLANCHARD as the natural mother and guardian of PHILLIP BLANCHARD**

**v.**

**STEVEN T. CORBIN, individually, WILLIE CORBIN, JR., individually, and STEVEN T. CORBIN and WILLIE CORBIN, JR., d/b/a WILLIE CORBIN**

**ROOFING, THE CITY OF MEMPHIS, TENNESSEE, a Governmental Entity, and SHELBY COUNTY GOVERNMENT, a Governmental Entity**

**Rule 9 Interlocutory Appeal from the Circuit Court for Shelby County**
**Nos. CT-001614-03, CT-003635-03, CT-003636-03    James F. Russell, Judge**

---

**Nos. W2006-02614-COA-R9-CV,  W2006-02615-COA-R9-CV, W2006-02616-COA-R9-CV**
**Filed December 12, 2007**

This interlocutory appeal concerns the liability of a municipality. Pursuant to the municipality's ordinances, a municipal inspector inspected a church building. The inspector sent a letter to the owners of the building notifying them that, due to the dilapidated condition of the building, they were in violation of a city ordinance. Over a year later, the building collapsed, killing four people, including three children, and injuring a fifth. The plaintiffs filed suit against the municipality for negligence based on the initial inspection and the municipality's failure to take appropriate action after the initial inspection. Three separate lawsuits were consolidated into this action. The municipality filed a motion for summary judgment, arguing that it was immune from liability. The motion was denied. The municipality was then granted permission for this interlocutory appeal. On appeal, we affirm in part and reverse in part the trial court's denial of summary judgment, holding that the defendant municipality may not be immune from liability for some claims under the facts presented in this case.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS and DAVID R. FARMER, JJ., joined.

Fred E. Jones, Jr., Memphis, Tennessee, for appellant City of Memphis

David A. McLaughlin and Tiffany G. Johnson, Memphis, Tennessee, for appellees Lisa Nelson, James Gray III, Bonnie Blanchard, Gillie Ford, and Kathy Ford

Shannon D. Elsea[*], Memphis, Tennessee, for appellees James Miller and Kathy Ford

---

[*] It is unclear from the record and from the briefs on appeal whom attorney Elsea represents. The briefs list attorney Elsea as the attorney for Jermaine Ford, deceased, whose representatives are James Miller and Kathy Ford.

**OPINION**

This case arises from a terrible tragedy. On Sunday, July 21, 2002, at approximately 5:00 p.m., Gwendolyn Gray was driving a 1992 Plymouth Voyager van; children Keisha Mitchell, Whitney Gray, and Jermaine Ford were passengers in the van. The van was outside the New Greater Hyde Park Missionary Baptist Church ("Church"), located at 875 Mississippi Street in Memphis, Tennessee. Suddenly, part of the Church building collapsed, crushing the van and its occupants. The occupants of the van died as a result of their injuries, and another child, Philip Blanchard, was seriously injured. This lawsuit against, among others, the Defendant/Appellant City of Memphis ("City") ensued. We review the events leading up to the Church collapse and examine the City's potential liability.

Under Article X, Section 48-220 of its Code of Ordinances ("the Ordinances"), the City is required, through its Director of Fire Services ("Director"), to inspect buildings that the Director believes are "dangerous, abandoned, blighted, or derelict." MEMPHIS, TENN., CODE OF ORDINANCES ch. 48, art. X, § 48-220(a). If the Director determines that the building is, in fact, dangerous, abandoned, blighted, or derelict, then the Director must give notice of his finding to the record owner of the building. *Id.* at § 48-220(b). This notice must contain, among other things, a list of items deemed not in compliance with the Ordinances and an order to register the building with the City. *Id.* The building's registration must contain a plan for rehabilitation, which the Director must approve. *Id.* at § 48-220(c). The Director is then required to "conduct quarterly inspections [of the building] to endeavor to bring the owner into compliance with applicable codes." *Id.* at § 48-220(e). In the event that the owner of the building does not comply with the Director's orders, the Director is required to "issue a citation or summons to the owner." *Id.* at § 48-221(e)(1). The inspector has the additional option of posting a "Do Not Occupy" warning, which serves to notify the building owners and occupants that they may no longer enter the premises.

On December 14, 2000, Anthony Newson ("Newson"), an inspector for the Memphis Fire Department, inspected the Church building to determine if it was "dangerous, abandoned, blighted or derelict." In this initial inspection, Newson found a "significant shift in the east wall"; broken windows; missing bricks on the north and east walls; loose and missing mortar on the north, south, and east walls; deteriorated metal flashing; deteriorated siding; a leaking area on the roof; and water-damaged flooring. Based on the shift in the east wall, the water damage, and the missing bricks and mortar, Newson was aware of the possibility that the Church could collapse and knew that an engineer needed to evaluate the building's structural integrity. Newson was also aware that the missing bricks and the shift in the building's wall could be signs of an imminent collapse. Newson notified the Church building's owners by letter that the building was in violation of the Ordinances. Newson's letter directed the owners of the building to "have a licensed engineer inspect the building for structural integrity" and to provide the engineer's report to the Director. Newson did not issue a "Do Not Occupy" order.

After that, Newson conducted his first followup quarterly inspection of the Church on March 14, 2001, as required by the Ordinances. Following this quarterly inspection, Newson sent another

letter to the owners of the Church property, noting that he found no evidence of rehabilitation and that the property was not yet registered with the City, as required by the Ordinances. On approximately April 22, 2001, the owners registered the Church building with the City and submitted a plan for rehabilitation. Under the rehabilitation plan, the owners planned to remedy the problems cited by Newson by December 15, 2001.

Between April 2001, the date of the rehabilitation plan, and December 15, 2001, the target date for bringing the Church building into compliance, Newson conducted three quarterly inspections and one compliance inspection. By the target date of December 15, 2001, the owners had not completed the required rehabilitation of the Church building, and Newson had not received an engineer's report on the structural integrity of the building. Newson conducted another quarterly inspection on April 1, 2002, with the same result. The sixth quarterly inspection was scheduled for the week of July 1, 2002, but did not occur.

On July 21, 2002, the Church collapsed, resulting in the tragedy.

Newson never obtained an engineer's report on the structural integrity of the building or issued a "Do Not Occupy" warning. After the Church collapsed, the City reprimanded Newson for his failure to obtain the engineer's report. Newson resigned from his position as an inspector in late 2002.

On March 21, 2003, a lawsuit was filed by Plaintiffs Lisa Nelson, individually and as the mother of Keisha Mitchell; Reverend James Gray III, individually and as the husband of Gwendolyn Gray and as the father of Whitney Gray; James Miller, individually and as the next of kin of Jermaine Ford; and Bonnie Blanchard as the mother of Phillip Blanchard. This lawsuit was brought against Steven Corbin and Willie Corbin, doing business as Willie Corbin Roofing. These Plaintiffs later amended their complaint to name the City of Memphis and Shelby County as Defendants. Subsequently, other lawsuits were filed by Gillie Ford, individually and as the father of Jonathan Ford and Christie Ford and by Kathy Ford, individually and as the mother of Jermaine Ford. These subsequent lawsuits were filed against the Church, Steven Corbin, Willie Corbin, Reverend James Gray III, the City of Memphis, and Shelby County. Ultimately, these separate cases were consolidated into the present matter.[1]

Before answering the complaints, the City filed a motion for summary judgment, arguing that it was immune from all claims on several grounds. The trial court denied the City's motion. The City then requested permission, under Rule 9 of the Tennessee Rules of Appellate Procedure, to appeal the denial of its motion for summary judgment. Both the trial court and this Court granted the City's request.

On appeal, the City raises three issues for review, namely, whether it has immunity from liability in this case under (1) Tennessee's Slum Clearance and Redevelopment Act ("Slum

---

[1]The cases were also consolidated for the purpose of oral argument on appeal.

Clearance Act"), Tennessee Code Annotated §§ 13-21-10 through -314; (2) the Tennessee Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated §§ 29-20-101 through -408; and (3) the common law public duty doctrine.

The standard of review of the denial of a motion for summary judgment is *de novo* on the record before us. ***Johnson v. LeBonheur Children's Med. Ctr.***, 74 S.W.3d 338, 342 (Tenn. 2002). As the trial court's decision concerns an issue of law, we accord that decision no presumption of correctness. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). Additionally, we must view the evidence "in the light most favorable to the nonmoving party," and "draw all reasonable inferences in the nonmoving party's favor." ***Staples v. CBL Associates, Inc.***, 15 S.W.3d 83, 89 (Tenn. 2000).

We now consider the first issue raised by the City: whether it has immunity from liability for damages under the Slum Clearance Act. The Act permits Tennessee municipalities to "repair, close or demolish" any structures found to be "unfit for human occupation or use" or "detrimental to the health, safety or morals" of the residents of the municipality. T.C.A. § 13-21-102 (1999). In order to do so, the municipality must first adopt ordinances finding that slum conditions exist within the municipality, and designating a "public officer" to exercise the powers granted. T.C.A. § 13-21-103 (1999). If the public officer issues an order to repair, close, or demolish an unfit structure, the Slum Clearance Act sets forth the remedies available:

> (a) Any person affected by an order issued by the public officer may file a bill in the chancery court for an injunction restraining the public officer from carrying out the provisions of the order, and the court may, upon the filing of such bill, issue a temporary injunction restraining the public officer pending the final disposition of the cause; provided, that within sixty (60) days after the posting and service of the order of the public officer, such person shall file such bill in the court. Hearings shall be had by the court on such bills within twenty (20) days, or as soon thereafter as possible, and shall be given preference over other matters on the court's calendar.
> (b) The court shall hear and determine the issues raised and shall enter such final order or decree as law and justice may require. In all such proceedings, the findings of the public officer as to facts, if supported by evidence, shall be conclusive. Costs shall be in the discretion of the court. The remedies herein provided shall be exclusive remedies, and no person affected by an order of the public officer shall be entitled to recover any damages for action taken pursuant to any order of the public officer, or because of noncompliance by such person with any order of the public officer.

T.C.A. § 13-21-106 (1999). Thus, under the Act, "any person affected by" the order may seek an injunction of the municipality's action by filing a complaint in chancery court asking for a hearing. T.C.A. § 13-21-106(a)-(b) (1999). The Act also provides, however, that the injunction and hearing are the exclusive remedies available. T.C.A. § 13-21-106(b) (1999). The key statutory language to be interpreted in determining this issue on appeal is the phrase "person affected," which is not defined in the Act.

The City notes that, in its inspection of the Church building, it was enforcing anti-neglect ordinances specifically authorized under the Slum Clearance Act. The City contends that, under Tennessee Code Annotated § 13-21-106(b), any "person affected" by its enforcement of the Ordinances, including the Plaintiffs herein, is limited to the remedies of an injunction and a hearing before a chancellor, and may not recover damages for the actions of a public officer such as Inspector Newson. The Plaintiffs counter that the phrase "person affected" must be read in the context of the entire Slum Clearance Act. If this is done, they contend, it is clear that the General Assembly intended for the meaning of "person affected" to be limited to property owners and their tenants, and not to include bystanders such as the Plaintiffs in this action. This issue is one of first impression.

The object of statutory interpretation is "to ascertain and, if possible, give effect to the intention or purpose of the legislature . . . ." *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977). Legislative intent is determined "primarily from the natural and ordinary meaning of the language used, *when read in the context of the entire statute*, without any forced or subtle construction to limit or extend the import of the language." *Id.* (emphasis added); *see also Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).

The Slum Clearance Act states that once the City inspects the subject property, notices and orders are sent to the record owner of the property. *See generally* T.C.A. § 13-21-103 (1999). After notices or orders are sent to the owner, the Act provides that "[a]ny person affected by an order issued" under the Act may seek the specified remedies. T.C.A. § 13-21-106(a) (1999). Based on the Act's use of the broad phrase "person affected by an order," as opposed to a simple reference to the owner of the property, we gather that the General Assembly intended this provision to have application beyond the owner of an affected property.

For purposes of this appeal, however, we need not define the exact parameters of the phrase "person affected." We need only determine whether it was intended to limit the remedies available to parties such as the Plaintiffs, who were neither owners nor tenants of the affected property. Indeed, the record in this case indicates that, at the time of the Church collapse, the Plaintiffs' decedents were not even occupants in the Church building; they were simply sitting in a vehicle outside the building.

Viewing the Act as a whole, the exclusion of damages from the available remedies should not apply to a party for whom the statutory remedies are not available. Despite the breadth of the phrase "[a]ny person affected by an order," it is hard to imagine a circumstance in which a person sitting in a vehicle outside a building could obtain an order in chancery court enjoining the City public officer from enforcing his order requiring the building owner to repair his building. If the statutory remedies are unavailable to the Plaintiffs, then the statutory limitations on the remedies should not be applicable to them. We therefore conclude that Tennessee Code Annotated § 13-21-106(b) does not give the City immunity from liability to the Plaintiffs in this case.

The City also contends that it is immune from liability for the Plaintiffs' claims under the GTLA. The general rule of governmental immunity from lawsuits is set forth in Tennessee Code

Annotated § 29-20-201. The four exceptions to this general rule are enumerated in Tennessee Code Annotated §§ 29-20-202 through -205. The exception at issue in this appeal is contained in Tennessee Code Annotated § 29-20-205, which removes governmental immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." T.C.A. § 29-20-205 (2000).[2] As to be expected, however, there are exceptions to the exception; Tennessee Code Annotated § 29-20-205 also provides that certain governmental acts or omissions, even if performed negligently, are not actionable. T.C.A. § 29-20-205(1)-(9) (2000). The statute specifically exempts a governmental entity from liability for injuries arising out of the entity's "failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." T.C.A. § 29-20-205(4) (2000). Pursuant to this provision, the City argues on appeal that it is immune from the Plaintiffs' claims herein.

In response, the Plaintiffs argue that they do not challenge Newson's inspection. Rather, they base their claims in part on Newson's actions or the lack thereof after his inspection. Specifically, the Plaintiffs argue that Newson's failure to either obtain the engineer's report or issue a "Do Not Occupy" warning was a negligent act or omission. Thus, we are required to construe Tennessee Code Annotated § 29-20-205(4) to determine if it applies to the Plaintiffs' claims against the City. In interpreting this statute, we will not extend its express language beyond the ordinary meaning of that language. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001) (opining that Tennessee courts must strictly construe the GTLA because the General Assembly created it in derogation of the common law).

This Court was faced with a similar issue in the case of *Laws v. Water and Light Comm'n of the Town of Greeneville*, No. E2002-01152-COA-R3-CV, 2003 WL 22071548 (Tenn. Ct. App. May 8, 2003). In *Laws*, in order to find leaks in Greeneville's sewers, the Greeneville Water and Light Commission used a procedure that forced smoke through the system. *Laws*, 2003 WL 22071548, at *1. The Commission's alleged negligence in performing this inspection caused injury to a Greeneville resident by causing smoke to enter her house, which aggravated her chronic lung condition. *Id.* The resident sued the Commission, asserting that its failure to give her advance warning that it planned to use this procedure was a negligent omission. *Id.*

The Commission asserted immunity under Tennessee Code Annotated § 29-20-205(4), arguing that "any warning that might have been given regarding the smoking of the sewers 'would clearly have been given as part of the inspection process and would be an integral part of that process.' " *Id.* at *2. The trial court found that the Commission was ninety percent at fault in causing the resident's damages, and entered its final judgment accordingly. *Id.* The Commission appealed, arguing, among other things, that the trial court erred by not holding it immune from liability under section 29-20-205(4). The Court of Appeals held that the Commission was not immune from suit under that provision. *Id.* at *3. The *Laws* Court first noted that it was required to strictly construe

[2] The GTLA also removes governmental immunity from claims involving negligent operation of motor vehicles, unsafe streets and highways, and dangerous public structures. T.C.A. §§ 29-20-202 through -204 (2000). These provisions are not at issue in this appeal.

the GTLA provision at issue because the GTLA "is in derogation of the common law . . . ." *Id.* (citing *Limbaugh*, 59 S.W.3d at 83). The Court found that "inspection" had a very specific meaning. In light of the mandatory rule of strict construction, the Court declined to "extend the definition of 'inspection' to include the warning of an inspection." *Id.*

In the case at bar, the Plaintiffs' claims against the City, set forth in the Amended Complaint, include allegations that the City (1) negligently failed to condemn the property after Newson's inspection; (2) failed to take action to protect Church members and the public when it knew, from Newson's inspection, that the property was dangerous; (3) failed to enforce the City code requirements; (4) failed to make proper inspections and specifically failed to inspect the Church building before the date of the Church collapse; (5) failed to issue orders to ensure the public safety and failed to require repairs by competent contractors; (6) failed to report the Church's City code violations to the City Attorney; and (7) failed to declare the Church building unfit for public use and to post a notice to that effect.

Thus, some of the Plaintiffs' allegations are based on the City's alleged failure to make proper inspections prior to the date of the Church collapse. Insofar as the Plaintiffs' claims against the City are based on negligent inspection or failure to inspect, the City is immune from liability pursuant to Tennessee Code Annotated § 29-20-205(4).

The remainder of the allegations in the Amended Complaint, however, do not stem from an alleged negligent inspection or failure to inspect. Rather, they are based on the City's decisions and its failure to act after the inspections were done; specifically, the remaining allegations pertain to the City's alleged failure to either require proper repair of the Church building or post "Do Not Occupy" warnings. As in *Laws*, we decline to extend the definition of "inspection" to include the actions that the City took or did not take after performing the inspection. Therefore, to the extent that the Plaintiffs' claims are based on the City's decisions and actions after inspecting the Church building, and not on negligent inspection or failure to inspect, we hold that Tennessee Code Annotated § 29-20-205(4) does not provide the City with immunity from liability.

As the third and final issue on appeal, the City maintains that it is immune from liability under the public duty doctrine. The Supreme Court of Tennessee formally recognized the public duty doctrine in *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995). The public duty doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Id.* at 397. In another formulation of the doctrine, the Supreme Court stated, " 'It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally.' " *Id.* (quoting *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn. 1975)).

In *Ezell*, the Supreme Court concluded that "the public duty doctrine was not abolished by the Tennessee Governmental Tort Liability Act, and that sound policy reasons warrant its continuance." *Ezell*, 902 S.W.2d at 397. *Ezell* also, however, recognized a "special duty" exception

to the public duty doctrine. *Id.* at 401. The Court described this exception as applying "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Id.* After examining how different jurisdictions defined the concept of "special duty," the Court adopted the following definition:

> [A] special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402.

The City asserts that the public duty doctrine shields it from liability in this case because the Plaintiffs have failed to allege an injury that is not common to the public at large. The City also contends that none of the three elements of the special duty exception operate in this case to remove immunity under the public duty doctrine. The Plaintiffs respond that the facts in this case implicate the first and third types of special duty; they argue that City officials affirmatively undertook to protect the Plaintiffs and that the City's actions involved intent, malice, or reckless misconduct.

After examining the appellate record, we find no evidence indicating that the City affirmatively undertook to protect the Plaintiffs' decedents or that the Plaintiffs' decedents relied upon any such undertaking by the City. Likewise, we find no evidence in the record that would allow a reasonable fact-finder to conclude that the City, through its employee Newson, acted with intent or malice.

We must, however, examine the "reckless misconduct" prong of the special duty exception. In this context, a person is deemed to have engaged in reckless conduct if he is "aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Gardner v. Insura Prop. & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). Tennessee courts have also found recklessness where "[t]he preponderance of evidence in the record point[ed] to extreme dereliction by the County in the operation of its [misdemeanant] program, and such neglect of duty substantially and unjustifiably increased the risk that harm would occur." *Brown v. Hamilton County*, 126 S.W.3d 43, 50 (Tenn. Ct. App. 2003). Viewing the evidence before us in the light most favorable to the Plaintiffs, we find that there is sufficient evidence to support a factual finding that the City's conduct was reckless.

The record reveals that Newson made several observations concerning the Church property that, according to his own deposition, gave him reason to believe that the Church was in danger of

imminent collapse. Nevertheless, Newson allowed the December 15, 2001 rehabilitation target date to pass without demanding an engineer's report on the structural integrity of the building or issuing a "Do Not Occupy" warning. After the rehabilitation target date passed, another seven months elapsed before the Church collapsed; in that time, the City took no protective action on a building that had been identified as possibly having serious structural problems. These factual allegations are sufficient to permit a finding that the City consciously disregarded a substantial and unjustifiable risk "of such a nature that its disregard constitutes a gross deviation" from the standard of ordinary care, and would therefore fall within the reckless misconduct prong of the special duty exception to the public duty doctrine. Therefore, to the extent that the Plaintiffs allege conduct by City officials that could be deemed reckless, the City is not immune from liability under the public duty doctrine.

In sum, we hold that the City is not immune from liability under the Slum Clearance Act. To the extent that the Plaintiffs' allegations against the City are based on negligent inspection or failure to inspect, the City is immune from liability under Tennessee Code Annotated § 29-20-2051(4). As to the remainder of the Plaintiffs' allegations, the City has no immunity under the GTLA. In addition, as to the remaining allegations, insofar as the Plaintiffs allege misconduct by City officials that could be deemed reckless, the City is not immune from liability under the public duty doctrine.

The decision of the trial court is affirmed in part and reversed in part as set forth above. Costs are taxed one-half to the Appellant City of Memphis and one-half to the Appellees Gillie Ford, Kathy Ford, Lisa Nelson, Reverend James Gray III, and Bonnie Blanchard, in equal shares, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE