IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 15, 2011 Session

## JOHN DURLING KEMPER v. JOE C. BAKER, INDIVIDUALLY AND IN HIS CAPACITY AS CITY MANAGER OF BERRY HILL, TENNESSEE ET AL.

### Appeal from the Circuit Court for Davidson County
No. 08C-280, 08C-287, 07C-2584      Barbara Haynes, Judge

---

### No. M2011-00407-COA-R3-CV - Filed April 19, 2012

---

This is a GTLA action against a city and city official following a construction accident in which an exterior wall of a building collapsed, causing serious injuries to one of the plaintiffs and causing the death of the other plaintiff. The building was being demolished and the plaintiffs were employed by a private company that was to disconnect gas utilities on the privately owned building. The plaintiffs claim the collapse was caused, in part, by the failure of the city and the city manager to enforce certain OSHA regulations and provisions of the municipal building code. The trial court dismissed the plaintiffs' claims against the city and the city official on the defendants' motion for summary judgment based on governmental immunity. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Larry D. Ashworth, Nashville, Tennessee, for the appellants, John Durling Kemper and Richard Whiteshield.

Mary Byrd Ferrara, Nashville, Tennessee, for the appellees, Joe C. Baker, Individually and in his capacity as City Manager of Berry Hill, Tennessee; Charles McKelvey, Individually and in his capacity as Building Inspector for the City of Berry Hill, Tennessee; and the City of Berry Hill, Tennessee, a government entity.

# OPINION

On the morning of January 26, 2007, John Kemper and Richard Whiteshield arrived at a building demolition site on 2317 Franklin Road, Berry Hill, Tennessee. They were employees of Tennessee Technological Consultants ("TTC"), a subcontractor on the demolition project hired to disconnect the building's gas lines. They observed that some preliminary demolition activities had already begun. In an effort to locate the gas lines so they could be disconnected, Mr. Kemper, Mr. Whiteshield, and one other employee began taking turns jackhammering at the base of the building's front exterior wall. Shortly after Mr. Whiteshield took over operation of the jackhammer, the wall collapsed, seriously injuring Mr. Kemper and killing Mr. Whiteshield.

Mr. Kemper and Mr. Whiteshield's next of kin (collectively, "Plaintiffs") each filed negligence actions against the general contractor for the demolition, David Boatman d/b/a Boatman Wrecking and Construction ("Boatman"); the owner of the building, David Mangum; Monell's Dining and Catering, which formerly held a renovation permit for the building; the City of Berry Hill; and two city officials in their individual and official capacities – the Director of Building Inspection, Charles McKelvey, and the City Manager, Joe Baker. The separate actions were consolidated on September 9, 2008. Plaintiffs reached settlement agreements with Boatman, and all claims against Boatman were then voluntarily dismissed. Upon motions filed by the defendants, Plaintiffs' claims against Mr. Mangum, Monell's Dining and Catering, and Inspector McKelvey were dismissed. Plaintiffs do not appeal the dismissal of the above defendants.[1]

The only remaining defendants, the City of Berry Hill and City Manager Joe Baker ("the City," "Manager Baker," and collectively, "Defendants") moved for summary judgment, asserting immunity from liability pursuant to the Tennessee Government Tort Liability Act, Tennessee Code Annotated §§ 29-20-201 to -206 ("GTLA"), and the common law public duty doctrine. The trial court granted the motion, and Plaintiffs appealed.

We are asked to determine whether the City and Manager Baker's immunity is removed in this case pursuant to Tennessee Code Annotated § 29-20-205 and whether the

---

[1]Plaintiffs' claims against Mr. Mangum were dismissed on summary judgment, and their claims against Inspector McKelvey in his individual capacity were dismissed due to the fact that he passed away during litigation. The claims against Inspector McKelvey in his official capacity proceeded as claims against the City of Berry Hill. The record does not reflect how the claims against Monell's were resolved, but Monell's is not a party to this appeal.

special duty exception to the public duty doctrine applies.[2] The facts germane to this issue, which are undisputed, are as follows.

Defendants' involvement in the events leading up to this tragedy was limited. On July 24, 2006, City Manager Baker issued a renovation permit for 2317 Franklin Road to Monell's Dining and Catering. At the time, the building was owned by Young Equities, Inc. The permit classified the renovation as "alteration," and authorized Monell's to "change some wiring, plumbing & HVAC. Frame walls and install drop ceiling. Windows and doors repair." On November 6, 2006, Inspector McKelvey went to the property for a progress inspection, and discovered the renovation had been abandoned – no work was being done, the windows were boarded up, and the roof was partially caved in and blocked entry into the building beyond a few feet – consequently, Inspector McKelvey cancelled the renovation permit that same day. Shortly thereafter, David Mangum, a private individual, informed Manager Baker that he was interested in purchasing the property from Young Equities and demolishing the building. The sale was completed January 17, 2007, and the demolition permit was issued the following day. The permit describes the work to be done as "demolition and removal of building," and lists "Boatman Construction & Wrecking" as the general contractor. The permit also notes that the demolition was cleared to proceed by Metro Nashville Davidson County Air Quality Control, which had inspected the building for asbestos and other air pollutants. After issuing the demolition permit to Mangum, the City was not involved in the demolition project.

Plaintiff's position is that the City and Manager Baker are subject to liability for negligently failing to ensure certain safety rules and regulations were followed prior to and during the demolition, including, *inter alia*, 1) failing to ensure Boatman had an engineering survey prepared on the property, 2) failing to ensure the walls and the floors of the building were shored and braced, 3) Inspector McKelvey's failure to issue a "stop work order" in November 2006 when he discovered the building renovation had been abandoned and the roof was partially caved in, 5) failing to post notice on the property until the demolition was complete that the building was in an unsafe condition and that use or occupation was prohibited, 4) failing to notify Mr. Mangum the building in an unsafe condition, and 5)

---

[2]Relying on *State v. Centurion Industria e Comercio de Cigarros, L.T.D.A.*, No. M2010-02602-COA-R3-CV, 2011 WL 2923725 (Tenn. Ct. App. June 28, 2011) (no Tenn. R. App. P. 11 application filed), Plaintiffs argue the grant of summary judgment should be reversed because the trial court's order does not comply with Rule 56.04 in that it fails to "state the legal grounds upon which the court denies or grants the motion." However, the only issue before the trial court was Defendants' immunity; thus, in the interest of judicial economy, we are able to review the decision without speculating about the grounds on which the trial court ruled. *See e.g., Burse v. Hicks*, No. W2007-02848-COA-R3-Cv, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008).

failing to ensure Boatman disconnected the utilities prior to the commencement of demolition activities.

**ANALYSIS**

**I.**

Plaintiffs' first two claims are based on Occupational Safety and Health regulations. *See* 29 C.F.R. 1926.850(a) & (b). We have determined that the OSHA claims against the City and Manager Baker were properly dismissed.

The undisputed facts show Mr. Kemper and Mr. Whiteshield were employees of TTC and Boatman, and were working on a building privately owned by Mr. Mangum. No suggestion or allegation has been made that the City or Manager Baker were employers of Mr. Kemper and Mr. Whiteshield. *See* Tenn. Code Ann. § 50-3-103(8) (definition of "employer" for OSHA purposes). As such, the City and Manager Baker were not required to prepare the engineering survey, brace the walls and floors, or to ensure Boatman did. *See* 29 U.S.C. § 654 ("Duties of employers and employees"); Tenn. Code Ann. § 50-3-105 ("Rights and duties of employers"). Mr. Kemper and Mr. Whiteshield's workplace safety was Boatman's responsibility as the general contractor.[3] *Id.*; *see* Berry Hill, Tenn., Code § 12-103 ("All buildings and structures, both existing and new, all devices, equipment and safeguards required by this chapter in a building when it is erected, altered or repaired, shall be maintained in good working order by the owner or his designated agent.").

**II.**

Plaintiffs' remaining claims are based on provisions of the City of Berry Hill Municipal Code, § 12 "Building, Utility, Etc." The relevant provisions provide:

> **12-101. <u>Purpose.</u>** This chapter is hereby declared to be remedial, and shall be construed to secure the beneficial interests and purposes thereof, which are public safety, health and general welfare, through structural strength, stability, sanitation, adequate light and ventilation and safety to life and property from fire and other hazards incident to the construction, alteration, repair, removal, demolition, use and occupancy of buildings, structures or premises.
> . . . .

---

[3]Boatman was fined $5200 by the Tennessee Division of Occupational Safety and Health for these violations.

**12-107. Stop work orders.** Upon notice from the director of building inspection that work on any building or structure is being done contrary to the provisions of this chapter or in a dangerous or unsafe manner, such work shall be immediately stopped. . . . When an emergency exists, no written notice shall be required to be given by the director.

Such notice as required may be in the form of a placard posted by the inspector conspicuously on the building in which the work is in progress. Removal of such notice or placard without the express consent of the director of building inspection is a violation of this chapter.

. . . .

**12-124. Unsafe Buildings.** (1) Defined: same declared illegal. All building or structures which are unsafe, unsanitary, or not provided with adequate egress, or which constitute a fire hazard, or which are otherwise dangerous to human life and property, or which, in relation to existing use, constitute a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence or abandonment, are severally, in contemplation of this chapter, unsafe buildings. All such unsafe buildings or structures are hereby declared to be illegal and shall be abated by repair and rehabilitation or by demolition in accordance with the procedures set out in this section.
(2) Notice to repair, demolish, vacate, etc., unsafe buildings. Whenever the director of building inspection shall find any building or structure or portion thereof to be unsafe, as defined in this section, he shall, in accordance with established procedures for legal notice, give the owner, agent or person in control of such building or structure written notice by registered mail stating the defects thereof. . . . The director shall cause to be posted at each entrance to such building or structure a notice stating: "This Building is Unsafe and Its Use or Occupancy has been Prohibited by the Director of Building Inspection."

Such notice shall remain posted until the required repairs are made or until demolition is completed. It shall be unlawful for any person or his agents or representatives to remove such notice without written permission of the director, or for any person to enter such building or structure except for the purpose of making the required repairs or of demolishing the same.

*Id.* § 12-124 (Emphasis in original)(Internal citations omitted).

Last, Building Code § 12-119 adopts the International Building Code, which requires that utility connections be disconnected prior to demolition activities. Berry Hill, Tenn., Code § 12-119.

From a review of the pleadings, briefs to this court, and the above provisions, it is clear Plaintiffs' claims rest on Inspector McKelvey's alleged negligence in failing to comply (or failing to ensure compliance) with the above provisions, and not on any failures on the part of Manager Baker. Moreover, there are no allegations that Manager Baker had a duty to prevent the specific acts of negligence allegedly committed by Inspector McKelvey, or that he is otherwise responsible for those acts. Thus, we find the remaining claims against Manager Baker were also properly dismissed. *See Karnes*, 2010 WL 3716458, at *2 ("As in any other negligence action, a plaintiff alleging negligence of a government employee must establish the existence of a duty or standard of care.").

This leaves the question of whether the City is subject to liability for Inspector McKelvey's alleged negligence in failing to adhere to and enforce the above provisions of the Berry Hill Building Code. The City argues it is immune from liability for Plaintiffs' claims under the Government Tort Liability Act and/or the public duty doctrine.

Because this matter was resolved in the trial court on Defendants' motion for summary judgment, which is a question of law, our review is de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment should be granted when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). We must take the strongest legitimate view of the evidence in favor of Plaintiffs, allow all reasonable inferences in their favor, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975).

A. MUNICIPAL IMMUNITY

Local governmental entities are immune from suit except when the General Assembly has, by statute, explicitly permitted them to be sued. *Brown v. Hamilton Cnty*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003) (citing *Fretwell v. Chaffin*, 652 S.W.2d 755, 756 (Tenn. 1983)). The GTLA "reaffirms and codifies" this general rule, *Ezell v. Cockrell*, 902 S.W.2d 394, 400 (Tenn. 1995); however, it also provides certain enumerated cases in which immunity is removed, including in actions based on "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." *See* Tenn. Code Ann. § 29-20-205. Thus, as this court has explained, "[i]n a negligence action against a local governmental entity," as here, "the threshold question is generally whether that entity's governmental immunity has been waived under the GTLA." *Wells v. Hamblen Cnty*, No.

E2004-01968-COA-R3-CV, 2005 WL 2007197, at *3 (Tenn. Ct. App. Aug. 22, 2005) (citations omitted). However, removal of immunity under the GTLA does not end the inquiry. The "public duty doctrine" provides "an additional layer of defense to acts or omissions not immune under the GTLA." *Matthews v. Pickett Cnty*, 996 S.W.2d 162, 164-65 (Tenn. 1999); *see also Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998) ("If, however, the GTLA does not provide immunity, courts may look to the general rule of immunity under the public duty doctrine."). Immunity under the public duty doctrine extends to government officials as well as government entities. *Hurd v. Flores*, 221 S.W.3d 14, 27 n.4 (Tenn. Ct. App. 2006). Pursuant to the special duty exception, a plaintiff can overcome public duty immunity only by "show[ing] the existence of a duty particular to him or her, as distinct from a duty owed to the public in general." *Wells*, 2005 WL 2007197, at *3-4 (citations omitted).

Thus, for Plaintiffs to prevail on their claims against the City based on Inspector McKelvey's alleged negligence, the claims must fall under one of the removal of immunity provisions of the GTLA *and* the special duty exception to the public duty doctrine. We have determined that as a matter of law, that Plaintiffs' claims do not.

## B. GTLA

The GTLA provides that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of employment," with the following exceptions, in which immunity applies:

> 1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> . . . .
>
> 3) the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;
>
> 4) a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property . . . ."

Tenn. Code Ann. § 29-20-205.

Plaintiffs' claim that Inspector McKelvey failed to ensure Boatman had the utilities disconnected prior to the commencement of any demolition activities falls under subsection (4), "a failure to make an inspection, or by reason of making an inadequate or negligent

inspection." *Id.* Plaintiffs do not claim (nor do the cited regulations require) that the City, or Inspector McKelvey was responsible for disconnecting the utilities, or for hiring a contractor to disconnect the utilities.[4] Plaintiffs' claim that the City is liable because Inspector McKelvey negligently failed to issue a stop work order in November 2006 falls under subsection (3), "the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit . . . or similar authorization."[5] *Id.* Thus, the City is immune from liability for these claims.

## C. THE PUBLIC DUTY DOCTRINE

As for the remaining claims, we find the City is immune from liability under the public duty doctrine. "Succinctly stated, the public duty doctrine provides that private citizens cannot maintain an action against public officials or entities unless they are able to allege a special duty not owed to the public generally." *See Hurd*, 221 S.W.3d at 28. The special duty exception applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed . . . to the public at large." *Ezell*, 902 S.W.2d at 401. In *Ezell*, the Tennessee Supreme Court articulated three conditions which will establish the special duty exception:

1) a public official affirmatively undertakes to protect the plaintiff and the plaintiff relies upon the undertaking;

2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which plaintiff is a member, from failure to enforce certain laws; or

3) a plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402.

---

[4]Although Berry Hill is a distinct entity from Metro Nashville Davidson County, utilities in Berry Hill are supplied by Metro.

[5]Notwithstanding issues of immunity, this claim is totally without merit due to the fact that no work was being performed in November 2006, and the fact that when Inspector McKelvey discovered the abandoned renovation project and the partially caved in roof, the undisputed facts show that he cancelled Monell's renovation permit and issued a demolition permit to Mr. Mangum; thus no "stop work order" was necessary.

Plaintiffs argue they have satisfied the last condition in that their cause of action alleges reckless misconduct on the part of Inspector McKelvey; specifically that he recklessly failed to notify Mr. Mangum (when Mr. Mangum acquired the property) that the building at 2317 Franklin Road was in an unsafe condition, and would need to be repaired or demolished, and that he recklessly failed to post a "do not occupy" notice on the building. We respectfully disagree.

The undisputed facts show Mr. Mangum had actual notice of the building's condition, namely that it had been boarded up, abandoned, and that the roof had collapsed. The building's advanced state of disrepair prevented use or occupation of the building, or even entry beyond a few feet. Moreover, the demolition permit was timely issued to Mr. Mangum the day after he purchased the property, and Mr. Mangum was in the process of remedying the unsafe condition when the tragic accident occurred. He had the Metro air quality report prepared, secured the demolition permit, and solicited the requisite contractors, who had actually commenced demolition activities. *See* Berry Hill, Tenn., Code § 12-124 (stating that an owner of an unsafe building may remedy the unsafe condition in one of two ways: repair or demolition).

Taking the strongest legitimate view of the facts in this case in favor of Plaintiffs, allowing all reasonable inferences in their favor, and discarding all countervailing evidence as the summary judgment standard requires, we have concluded that a reasonable person could not find that Inspector McKelvey's acts or omissions were the result of "intent, malice, or reckless misconduct." *Ezell*, 902 S.W.2d at 402; *Accord Ford v. New Greater Hyde Park Missionary Baptist Church*, No. W2006-012614-COA-R9-CV, 2007 WL 4355490, at *8 (Tenn. Ct. App. Dec. 12, 2007) (Evidence found sufficient to support a factual finding of recklessness for inspector's failure to post "do not occupy" sign in building collapse case, when more than a year after discovery of the building's defects, Inspector was aware owners had not begun repair or demolition and building continued to be used at full occupancy.).

For the foregoing reasons, the special duty exception does not apply and the City is immune from Plaintiffs' remaining claims under the public duty doctrine. *See Ezell*, 902 S.W.2d at 402.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiffs.

_____
FRANK G. CLEMENT, JR., JUDGE